IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **In re Cattle and Beef Antitrust Litigation** | Case No.: <br><br> Underlying Case No: 22-md-3031-JRT-JFD (D. Minn). <br><br><br> **The JBS Defendants' Motion to Compel Nebraska Beef To Respond To A Subpoena** |

The JBS Defendants in the underlying litigation ("Movants") move under Federal Rule of Civil Procedure 45 for an Order compelling Nebraska Beef, Ltd. ("Nebraska Beef") to respond to Requests 2 through 9 in the Subpoena attached as Exhibit 1.

In support of their Motion, Movants state:

### Background

1.  Movants served their Subpoena on Nebraska Beef in August 2022.

2.  Nebraska Beef did not object to most of the Requests in Movants' Subpoena. Nebraska Beef's letter containing its Response and Objections ("Nebraska Beef's Responses and Objections") is attached as Exhibit 2. Among other things, Nebraska Beef did not object to the Subpoena's requests for emails.

3.  Movants' Requests are relevant under the Court's extensive analysis in the Memorandum and Order relating to the subpoena served on Nebraska Beef by Plaintiffs in the underlying litigation. *See* Filing No. 39 in Case No. 8:22-cv-00204-JFB-CRZ.

4. Nebraska Beef has refused to produce any documents, information, or data in response to the Movants' Subpoena's Requests at issue, except data that Nebraska Beef says it obtained from the USDA.

5. Nebraska Beef should be compelled to respond to the Movants Subpoena's Requests.

6. For the Court's convenience, Movants provide this summary of the key points presented by this Motion:

a) Nebraska Beef has accessible data regarding the names and addresses of its cattle suppliers, either in a computer or in hard copy. That data is essential to understanding Nebraska Beef's procurement information relevant to the claims and defenses in the underlying litigation, and that data is a crucial complement to the USDA data that Nebraska Beef has produced. As discussed in more detail below, Nebraska Beef has already filed a sample of that data with the Court. Nebraska Beef should be compelled to produce the remaining requested data consistent with an unredacted version of that sample.

b) Nebraska Beef has information sufficient to show its contract terms with cattle suppliers. That information is essential to understanding Nebraska Beef's cattle procurement relevant to the claims and defenses in the underlying litigation. It is an important complement to the USDA data that Nebraska Beef has produced (since such information will not be reflected in the USDA data). Nebraska Beef should be compelled to produce those documents sufficient to show its contract terms with cattle suppliers.

c) Nebraska Beef has documents and data used in ordinary course of its business concerning its capacity and capacity utilization (e.g., the number of head processed). That information is important to evaluating the claims by Plaintiffs in the underlying litigation.[1] Nebraska Beef should be compelled to produce those documents and that data.

d) Nebraska Beef should be required to produce a metadata log of emails and attachments, consistent with Plaintiffs' Request.

### Procurement Data and Contracts

7. Nebraska Beef has produced text files (.txt) that it says it obtained from the USDA.

8. The USDA data does not cover the full January 1, 2010, to December 31, 2020, time period sought by the Subpoena for such transaction-level data. The USDA data appears to start at 2013.

9. That USDA data also does not include important relevant information in Nebraska Beef's possession, custody, and control.

10. Specifically, that USDA data does not contain information regarding Nebraska Beef's feedlot suppliers and procurement contracts that is vital to evaluating the procurement transactions relevant to the claims and defenses in the underlying lawsuit.

11. Nebraska Beef has an available report it calls a Summary Transaction Report that partially fills those gaps by identifying the feedlot suppliers. In fact, Nebraska Beef filed an

---

[1] Plaintiffs in the underlying litigation claim, for example, that the Defendants behaved differently than packers like Nebraska Beef. *See, e.g.*, Amended Complaint (Ex. 7 to Filing No. 34 in Case No. 8:22-cv-00204-JFB-CRZ), ¶ 14 ("while [Defendants] each gradually increased their slaughter volume from 2016 after their dramatic 2015 reductions, as the supply of fed cattle increased, their rate of increase was vastly outpaced by the slaughter volume increases of Independent Packers during the same period.")

example of that report in the miscellaneous case involving Plaintiffs' subpoena to Nebraska Beef. *See* Pages 4-5 of Filing No. 34-16 in Case No. 8:22-cv-00204-JFB-CRZ.

12. Nebraska Beef should be ordered to produce the following information: (a) unredacted copies of the Summary Transaction Reports run for the entire requested time period, and (b) documents sufficient to show the terms of its grid, forward, and formula contracts with cattle suppliers, because those documents are essential to understanding and evaluating the procurement data obtained from the USDA.

13. They can be designated "Highly Confidential" under the Protective Order.

### Capacity And Capacity Utilization

14. Nebraska Beef has refused to produce any data, documents, and information in its possession, custody, or control regarding its capacity and capacity utilization. Among other things, it has refused to produce any data regarding (a) the number of hours it operated each day and each week, (b) the days on which it operated per week, (c) the number of head processed per day and per week, and (d) the speed at which it ran its processing line, referred to as the plant's "chain speed."

15. Nebraska Beef has that data in accessible formats it runs and uses in the ordinary course of business, including reports that it calls kill reports.

16. Nebraska Beef should be compelled to produce the data, information, and documents, which can be designated "Highly Confidential" under the Protective Order.

### Data Dictionaries or Comparable Documents

17. Nebraska Beef has refused to produce any data dictionaries or comparable documents necessary to understand the entries in any data that it does produce.

18. Nebraska Beef should be compelled to produce those data dictionaries or comparable documents.

19. They can be designated "Highly Confidential" under the Protective Order.

## Emails

20. Nebraska Beef has not produced any emails in response to the Subpoena's Requests.

21. Nebraska Beef contends that it does not have any responsive emails.

22. Nebraska Beef originally said that it had too many potentially responsive emails.

23. Specifically, Nebraska Beef said earlier that it had 30 GB of information in its email servers that needed to be searched, and that running the search terms relating to Requests in Plaintiffs' Subpoena resulted in 19,193 email hits after it eliminated search results for "NB." Nebraska Beef summarized those hit results as follows at page 4 of Filing No. 54 in Case No. 22-cv-00204:

| Request Number | Number of Hits |
|---|---|
| Request No. 2 String (2) | 1,463 |
| Request No. 3 String 1 | 414 |
| Request No. 3 String (2) | 1 |
| Request No. 4, 8, 10 String 3 | 3,287 |
| Request No. 4, 8, 10 String 4 | 121 |
| Request No. 4, 8, 10 String 5 | 2,654 |
| Request No. 4, 8, 10 String 6 | 549 |
| Request No. 4, 8, 10 String 7 | 2,496 |
| Request No. 4, 8, 10 String 8 | 644 |

| | |
|---|---|
| Request No. 4, 8, 10 String 9 | 751 |
| Request No. 4, 8, 10 String 10 | 2,061 |
| Request No. 4, 8, 10 String (11) | 1,457 |
| Request No. 4, 8, 10 String (12) | 868 |
| Request No. 4, 8, 10 String (13) | 67 |
| Request No. 10 String (1) | 656 |
| Request No. 10 String (2) | 414 |
| Request No. 10 String (3) | 244 |
| Request No. 10 String (4) | 939 |
| Request No. 5 String 11 | 42 |
| Request No. 6-7 String 12 | 46 |
| Request No. 6-7 String (13) | 19 |

24. Now that Nebraska Beef's references to the large number of potentially responsive emails have not worked, Nebraska Beef has changed course by refusing to produce even a single email or attachment.

25. It is proper to order Nebraska Beef to produce a metadata log as outlined by Plaintiffs in their submission made on April 14, 2023.

**Meet-and-Confers**

26. Movants had a meet-and-confer with Nebraska Beef on February 28, 2023.

27. After that date, Movants were not included on some of the communications between Plaintiffs and Nebraska Beef.

6

28. Movants saw the submissions that Nebraska Beef and Plaintiffs made on April 14, 2023, and Movants' counsel met-and-conferred with Nebraska Beef's counsel on April 18, 2023, about this Motion in light of those filings.

### Nebraska Beef's Arguments About Accessibility

29. Nebraska Beef's arguments about the cost of accessing data are misplaced, because the arguments are vague and only directed to procurement data. As to the procurement data, Nebraska Beef's arguments are undermined by the fact that it already filed a sample of an accessible Summary Transaction Report with the Court. And its arguments are not directed to the remaining data, information, and reports involving capacity and capacity utilization. Its submission fails to address those specifically. On these facts, Movants should not have to pay anything for the data to be accessed. In the alternative, Movants request that they be provided access to have *an expert with prior pertinent experience working with AS400 systems to be retained by Movants* examine Nebraska Beef's computer systems to determine the scope of the work that would be involved to obtain any data that Nebraska Beef contends is not readily accessible. Movants further respectfully request that they be permitted, if appropriate after an initial examination by their expert, to make a future filing requesting that their expert be able to access the computers (with Nebraska Beef's cooperation) to obtain any relevant data that Nebraska Beef contends is not readily accessible.

**WHEREFORE**, Movants respectfully request that the Court enter an Order compelling Nebraska Beef to comply with Movants' Subpoena as requested in this Motion.

Dated April 18, 2023

> By: */s/ Patrick E. Brookhouser*
> Patrick E. Brookhouser, Jr. #19245
> Donald (DJ) Rison, # 27225
> MCGRATH NORTH MULLIN & KRATZ, PC LLO
> First National Tower, Suite 3700
> 1601 Dodge Street
> Omaha, NE 68102
> Tel: (402) 341-3070
> pbrookhouser@mcgrathnorth.com
> drison@mcgrathnorth.com
>
> *Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc., Swift Beef Company, and JBS S.A.*

## Certificate of Service

The undersigned certifies that on April 18, 2023, he is emailing a copy of this Motion to all attorneys who have entered an appearance in the related action involving Plaintiffs' subpoena to Nebraska Beef.

> */s/ Patrick E. Brookhouser*
> Patrick E. Brookhouser, Jr